UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                    REPORT & RECOMMENDATION

                           Plaintiff,

                                                    05-CR-6057T

              v.

TERRANCE SYKES,

                           Defendant.

---

## PRELIMINARY STATEMENT

              By Order of Hon. Michael A. Telesca, United States District Judge, dated October

4, 2005, all pretrial matters in the above-captioned case have been referred to this Court pursuant

to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 34).

              Defendant Terrance Sykes (hereinafter "Sykes") is charged in a three-count

indictment.  The first count charges Sykes with possessing with intent to distribute fifty grams or

more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  The second count

charges Sykes with possessing in excess of five grams of cocaine base, in violation of 21 U.S.C.

§ 844(a).  The final count charges Sykes with possessing a firearm in furtherance of the drug

trafficking crimes charged in the previous counts, in violation of 18 U.S.C. § 924(c)(1).  All

offenses are alleged to have occurred on or about October 28, 2004.  (Docket # 1).

              Before Sykes was indicted on the pending federal charges, he was prosecuted in

Monroe County Court for state crimes arising from the same facts that underlie this federal

prosecution.  On October 28, 2004, law enforcement officers executed a warrant to search the

downstairs apartment of 263 Emerson Street in the City of Rochester.  Following the search,

charges were presented to a New York State grand jury, and Sykes was indicted on narcotics

charges in violation of New York State Penal Law, namely, one count of criminal possession of a

controlled substance in the first degree (N.Y. Penal Law § 221.21[1]), one count of criminal

possession of a controlled substance in the third degree (N.Y. Penal Law § 221.16[1]) and three

counts of criminal use of drug paraphernalia in the second degree (N.Y. Penal Law § 220.50[1]).

Sykes thereafter challenged the lawfulness of the warrant, and, by Decision and Order dated

April 7, 2005, Acting Monroe County Court Judge John R. Schwartz determined that the warrant

lacked probable cause and suppressed the evidence seized pursuant to the search.  The State did

not appeal that ruling.

One week after that decision, on April 14, 2005, Sykes was indicted on the

pending federal charges, which are based upon the same acts from which the state charges arose.

As he did successfully in State Court, Sykes has moved to suppress the evidence seized from his

residence pursuant to the search warrant.  For essentially the same reasons he asserted in state

court, Sykes argues that the search warrant for 263 Emerson Street was unsupported by probable

cause.

Sykes recognizes that to justify suppression in federal court, however, his

argument must go farther than it did in state court.  Specifically, he must show that the warrant

lacks probable cause under a less demanding standard, the "totality of the circumstances"

standard of *Illinois v. Gates*, 462 U.S. 213 (1983), than the standard that applied in state court.

*See People v. Griminger*, 71 N.Y.2d 635, 639 (1988) ("as a matter of [New York] State

constitutional law," the *Aguilar-Spinelli* test, rather than the *Gates* test, is the standard to be

2

applied in evaluating probable cause for a search warrant).  Moreover, even if such a showing

can be made, suppression in a federal case is still not warranted if the government can

demonstrate that the officers were entitled to rely reasonably on the warrant's apparent validity.

*See United States v. Leon*, 468 U.S. 897 (1984).  Consideration of this second issue – the

applicability of *Leon* to this case – was absent from the state's court suppression analysis because

New York State does not recognize the *Leon* exception.  *See People v. Bigelow*, 497 N.Y.S.2d

630, 637 (1985).  For the reasons set forth below, it is precisely the availability of this exception

that leads to a different result in this federal case.

In addition to Sykes's probable cause challenge to the warrant, he also has filed

numerous other motions.[1]  At oral argument on those motions, the Court decided certain of the

motions, reserved judgment on others and scheduled an evidentiary hearing on Sykes's motion to

suppress statements.[2]  On the date scheduled for the hearing, September 1, 2005, Sykes advised

the Court through counsel that he was considering seeking permission to retain another attorney,

a decision that would necessitate the rescheduling of the hearing.  Upon questioning by this

Court, government counsel candidly acknowledged that if Sykes's probable cause challenge to

the search warrant resulted in suppression, as it did in state court, the government would lack

sufficient evidence to prosecute Sykes.  In view of that concession, with the consent of the

parties, this Court agreed to issue a report and recommendation initially relating only to the issue

---

[1]  Sykes's omnibus motion also sought, *inter alia*, dismissal of the indictment under the double jeopardy clause of the Fifth Amendment, suppression of statements, suppression of identification procedures, discovery and inspection, rulings on evidentiary matters under rules 404, 608 and 609 of the Federal Rules of Evidence, and disclosure of expert witnesses, *Brady* material and *Jencks* material.  (Docket # 18).

[2]  This Court reserved judgment on Sykes's motions to dismiss the indictment and to suppress statements. Each of the remaining requests was either resolved by the parties or decided in open court by the undersigned on August 4, 2005.  (Docket ## 24, 25).

of probable cause for the warrant.[3]  The following constitutes the recommendation of this Court on that issue only.

## FACTUAL BACKGROUND

On October 20, 2004, Rochester Police Officer Scott Hill presented a search warrant application to a Monroe County Court Judge for the downstairs apartment at 263 Emerson Street in the City of Rochester.  (Docket # 18, "Hill Aff.").  In his application, Hill affirmed that 263 Emerson Street was a two-story, multiple-family dwelling and that the eastern-most door on the north side of the building "leads directly into the [downstairs] apartment."  (Hill Aff. at 1).  Hill further affirmed that there was reasonable cause to believe cocaine and cocaine-related paraphernalia would be located in the apartment, as well as "items or articles of personal property tending to show identity of person in ownership, dominion or control of said premises."  (Hill Aff. at 1-2).

In his supporting affidavit, Hill affirmed that on September 28, 2004, he and Rochester Police Officers Sindoni and Alvarado met with a confidential informant for the purpose of "initiating a controlled purchase of cocaine from # 263 Emerson Street."  (Hill Aff. at 2).  According to Hill, "[t]he confidential informant is known personally to me and to other officers of the Rochester Police Department and the confidential informant has given reliable information in the past that has le[d] to the arrest and conviction of numerous persons for drug

---

[3]  After the hearing was adjourned, counsel for Sykes moved to be relieved.  (Docket # 31).  On October 12, 2005, this Court granted that application and appointed new counsel for Sykes.  On October 17, 2005, in anticipation of this decision recommending denial of Sykes's suppression motion, this Court issued an Order rescheduling for October 31, 2005 the evidentiary hearing on Sykes's challenge to the voluntariness of statements he allegedly made to law enforcement.

related offenses." (Hill Aff. at 3, 4). The officers searched the informant to ensure that he did

not possess any contraband and provided him with one thousand dollars in cash. Thereafter, the

officers observed the informant travel to an address on the westside of the City of Rochester (the

address was not disclosed). There, the informant picked up another individual, identified only as

an "unwitting person" in the affidavit,[4] and they traveled to the area of 263 Emerson Street. The

officers then observed the unidentified person, who shall be referred to as "UP-1," exit the

informant's vehicle and walk towards the eastern door of 263 Emerson Street, knock on the door

and enter. After "a few minutes," UP-1 emerged from the same door and returned to the

informant's vehicle. Together, UP-1 and the informant drove away from the area. (Hill Aff. at

2-3).

      Hill met with the informant after UP-1 had left the informant's vehicle. During

the meeting, the informant provided Hill with fifty dollars in cash and a clear, knotted plastic bag

containing a substance later determined to be cocaine. The informant further reported to Hill that

he had told UP-1 that he wanted a "31," referring to thirty-one grams of cocaine. UP-1

responded that they could go to "June" and directed the informant to 263 Emerson Street. The

affidavit does not identify "June"; nor does it disclose whether and, if so, why the informant

believed that UP-1 would attempt to purchase cocaine from the very location that was the object

of the officers' investigation.

      Hill's affidavit further states that the informant advised Hill that he had provided

one thousand dollars to UP-1 and watched UP-1 walk to the eastern door of 263 Emerson Street,

---

[4] For ease of reading, this Court will use the male pronoun to refer both to the informant and the "unwitting person," although the affidavit does not identify the gender of either individual.

knock and enter.  According to the informant, UP-1 returned to the car after a few minutes and provided him with the plastic bag containing the cocaine.  At that point, according to the informant's narrative, he drove UP-1 to another location, where UP-1 exited the informant's car.  (Hill Aff. at 2-3).  The affidavit does not state whether UP-1 told the informant what transpired inside the apartment, such as who sold him drugs, who was present during the sale and whether the seller obtained the drugs from inside the apartment.

        Approximately two weeks later, on October 13, 2004, Hill, along with another police officer, met with the same informant for the purpose of initiating another controlled purchase of cocaine from 263 Emerson Street.  The informant was again searched for contraband and provided with one thousand dollars in cash.  The officers observed the informant travel to a different, again undisclosed, address on the westside of the City of Rochester where he met with another individual identified only as "a different unwitting person" (hereinafter referred to as "UP-2").  The officers observed the informant and UP-2 travel to 263 Emerson Street, where UP-2 exited the vehicle, approached the eastern door of the building, knocked and entered the location.  After a few minutes, the officers saw UP-2 exit the residence and return to the informant's vehicle.  Again, the informant drove UP-2 to another location before meeting with Hill.  (Hill Aff. at 3).

        When he met with Hill, the informant provided him with twenty dollars in cash and a clear knotted, plastic bag containing a substance later determined to be cocaine.  The informant reported that he had met with UP-2 and told him that he wanted a "31."  The informant then asked UP-2 to go to "June," and UP-2 responded, "Yes."  As with the previous transaction, the affidavit failed either to identify "June" or to describe the informant's basis for believing that

UP-2 would know who "June" was.  According to the affidavit, the informant further advised

Hill that after driving to the area of 263 Emerson Street, he provided UP-2 with one thousand

dollars and watched UP-2 approach the eastern door and enter through the door.  After a few

minutes, UP-2 returned to the informant's car and turned over a clear plastic, knotted bag

containing cocaine.  (Hill Aff. at 3-4).  As with the description of the previous transaction, Hill's

affidavit does not recite any information from UP-2 about the events that transpired inside the

apartment.

## REPORT AND RECOMMENDATION

Sykes moves to suppress evidence seized from his apartment at 263 Emerson

Street on the grounds that the search warrant was unsupported by probable cause.  Specifically,

Sykes asserts that the affidavit submitted by Officer Hill in support of the warrant was deficient

because it was based upon information provided by unidentified third-parties whose reliability

and credibility had not been established.  (Docket # 18).

### A. Applicable Legal Standard

Prior to 1983, both federal and New York State courts evaluated the issue of

probable cause to support a search warrant that was based upon information from an informant

under the same standard of review, namely, the standard articulated by the Supreme Court in its

decisions in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410

(1969).  The *Aguilar-Spinelli* test, as it is commonly known, required that an application for a

warrant satisfy two requirements; first, that it describe the basis of the informant's knowledge;

and, second that it establish either the credibility of the informant or the veracity of his

information.  *Spinelli v. United States*, 393 U.S. at 416-17.  To demonstrate probable cause, each

of the requirements had to be independently satisfied, and a deficiency under one prong could not

be overcome by a strong showing of the other.  *See People v. DiFalco*, 80 N.Y.2d 693, 697

(1993); *see also Lopez v. Greiner*, 323 F. Supp. 2d 456, 474 (S.D.N.Y. 2004).

Over a decade later, in *Illinois v. Gates*, the Supreme Court repudiated the

*Aguilar-Spinelli* standard, replacing it instead with the "totality of the circumstances test."  462

U.S. at 232.  As the Court reasoned in *Gates*, "probable cause is a fluid concept – turning on the

assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced

to a neat set of legal rules."  *Id.* at 232.  While the Court acknowledged that the two prongs of the

*Aguilar-Spinelli* standard remain "highly relevant" to a probable cause determination, the Court

also made clear that they should no longer be viewed as rigid, independent requirements.  *Id.* at

230.  To the contrary, the issuing magistrate should "make a practical, common-sense decision

whether, given all the circumstances set forth in the affidavit before him . . . , there is a fair

probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.

A reviewing court's obligation is to determine whether the issuing judge had a "'substantial basis

for ... conclud[ing]' that probable cause existed."  *United States v. Smith*, 9 F.3d 1007, 1012 (2d

Cir. 1993) (quoting *Gates*, 462 U.S. at 238-39) (internal quotation omitted).

Because Sykes's challenge to the warrant in this Court is based upon the Fourth

Amendment to the federal Constitution, it must be determined under the *Gates* "totality of the

circumstances" test, rather than the *Aguilar-Spinelli* standard that applied to his state court

challenge.  *See People v. Griminger*, 71 N.Y.2d at 639.  As stated above, even if his challenge

succeeds under the "totality of the circumstances" test, another distinction between federal and

state law may still operate to preserve the evidence from suppression.  Here, unlike in state court,

the government may demonstrate that even though the warrant lacked probable cause, such

deficiency was not so apparent or substantial as to render the agents' reliance upon the warrant

unreasonable.  *See United States v. Leon*, 468 U.S. 897 (1984).

**B.  Application of the Totality of the Circumstances Test to the Instant
Search Warrant**

The question presented by Sykes's instant motion is twofold: first, does

application of the *Gates* standard, rather than the *Aguilar-Spinelli* standard, lead to the

conclusion that the warrant was unsupported by probable cause; and second, if so, does the good

faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984), apply to avoid

suppression.  As explained below, resolution of the first issue is difficult and close.  Indeed,

precisely because that determination is so close I find that the *Leon* exception should apply and

that the evidence seized pursuant to the warrant should not be suppressed.

The allegations supporting the challenged warrant are troubling because they rest

in such large measure on the actions of two unidentified individuals, UP-1 and UP-2, about

whom the application says very little, including the nature of their relationship, if any, to the

informant, to "June" at 263 Emerson Street and to one another.  Indeed, the affidavit says nothing

at all about their reliability.  Moreover, the actions that lie at the heart of the application – their

alleged purchases of cocaine inside the downstairs apartment of 263 Emerson Street – were not

witnessed either directly or through audio or video surveillance by law enforcement officers or

reliable informants.  Further, no indication exists in the application that either UP-1 or UP-2

described to the informant the events that had occurred inside the apartment or that either was

searched for contraband prior to entering 263 Emerson Street.

9

In analyzing the adequacy of Hill's affidavit, I find it helpful to place its assertions, which rest so critically on the two unidentified individuals, along the continuum of allegations that range from deficient to plainly adequate.  On the one hand, for example, where a reliable informant asserts that drugs are being sold from a particular apartment in a multi-family residence and that his basis of knowledge is merely his observation of an unidentified individual entering that apartment and exiting some time later with a package of narcotics, such assertions would fall short of establishing probable cause to search that apartment.  In the absence of further information, the possibility could not reasonably be discounted that the individual possessed the narcotics when he entered the apartment or that he obtained them after entering the apartment but from some location other than the apartment he entered.

Of course, it does not follow from this example that any warrant based upon information concerning narcotics sales that were neither directly made nor observed by agents or reliable informants is necessarily deficient.  For example, posit an affidavit that describes a reliable informant's assertion that drugs are being sold from a detached, single family house; the basis for his belief is his observation over a short period of time of numerous individuals entering the house and exiting moments later carrying small bags of narcotics bearing an identical, unique marking.  The affidavit further recounts the informant's statement that each individual informed him that he had purchased drugs inside the house.  Moreover, the police officer applying for the search warrant also describes in his affidavit his simultaneous observations of multiple people entering the house and exiting moments later carrying small bags.  In this scenario, although the informant's assertion that drugs were being sold from that house is not based upon personal knowledge of what transpired inside the house, that conclusion is nonetheless reasonable based

10

upon the totality of the circumstances.  *See, e.g.*, *United States v. Artez*, 389 F.3d 1106, 1115

(10th Cir. 2004) (upholding probable cause for warrant based upon purchases made by

"unwitting informant," whose reliability was not established); *United States v. Jordan*, 999 F.2d

11, 14 (1st Cir. 1993) (upholding probable cause for warrant based upon purchases made by two

identified individuals, whose reliability was not established, at the behest of a reliable

informant); *United States v. Blackwood*, 913 F.2d 139, 143 (4th Cir. 1990) (upholding probable

cause for warrant based upon single narcotics purchase made by unidentified individual, whose

reliability was not established, at the behest of a reliable informant).  *See also United States v.*

*Lattner*, 385 F.3d 947, 952-53 (6th Cir. 2004) (finding probable cause for search warrant based in

part upon officer's observations of "several people visiting the residence, staying a few minutes,

and then leaving with small packages"), *cert. denied*, 125 S. Ct. 160 (2005).  The question posed

by this case is whether the weight of the allegations contained in Hill's affidavit – falling as it

does somewhere in the spectrum between these two examples – is substantial enough to

constitute probable cause.

       Although this Court has not found any controlling decisions with facts similar to

those before it in this case, several other Circuits have addressed comparable, though not

identical, factual scenarios and have found them adequate to establish probable cause.  For

example, in *United States v. Artez*, 389 F.3d at 1112-13, the Tenth Circuit addressed the probable

cause of a warrant issued for the defendant's home based upon two narcotics purchases made by

"an unwitting informant" from the defendant's home.  Specifically, as the affidavit in support of

the warrant detailed, the affiant, who was a law enforcement officer, was contacted by a

confidential informant who claimed to have information about the defendant's sales of

11

methamphetamine from his home.  The informant explained that he could not purchase narcotics

directly from the defendant, but could do so through "an unwitting informant."  *Id.* at 1109.

Following that information, the affiant supervised two controlled purchases from the defendant's

home, both of which were conducted in essentially the same manner.  The officer searched the

confidential informant, provided him with cash, and followed him to the residence of the

unwitting witness.  The unwitting witness entered the confidential informant's car, and they

drove to the defendant's residence.  When they arrived, the officer observed the unwitting

witness approach the residence and enter.  Approximately twenty minutes later, the unwitting

witness reemerged and returned to the informant's vehicle.  The informant drove the unwitting

witness back to his residence before meeting with the officer and providing him with the

narcotics reportedly purchased by the witness from the defendant.  *Id.* at 1110.

   In addition, the officer's affidavit recited that he had conducted surveillance of the

defendant's home following the purchases and had observed several individuals arrive and stay at

the residence for only short periods of time.  *Id.*  The affidavit also disclosed that several of the

individuals who lived in or visited the defendant's home had convictions for narcotics offenses.

*Id.*

   Reversing the lower court's determination in *Artez*, the Tenth Circuit upheld the

search warrant for the defendant's residence.  According to the court, although the information in

the affidavit "did not eliminate the risk that the confidential informant was lying or was in error,

. . . viewing the totality of the circumstances, . . . the information contained in the affidavit

sufficiently reduced the probability."  *Id.* at 1115.  The court thus concluded that the issuing

judge was justified in determining that a substantial basis existed to find probable cause to search the defendant's residence.  *Id.*

In addition to the Tenth Circuit, the First and Fourth Circuits also have upheld search warrants based upon controlled purchases made by "unwitting" third-parties.  *See United States v. Jordan*, 999 F.2d at 12-14; *United States v. Blackwood*, 913 F.2d at 142-43.  In *Jordan*, the First Circuit determined that probable cause existed to support the warrant that had been issued for the defendant's home.  999 F.2d at 11.  The warrant was based upon a law enforcement officer's affidavit detailing two purchases of narcotics from the defendant's residence by identified, but apparently unwitting, individuals.  In each instance, under the affiant's surveillance, a reliable confidential informant met with one of the individuals at a rest stop and provided him with funds with which to purchase narcotics.  That individual then drove to another individual's residence, and the two individuals then proceeded to the defendant's home.  After leaving the defendant's residence, the two individuals met with the informant at a local school and delivered the narcotics, which one of the individuals represented had been purchased at the defendant's home.  *Id.* at 12-13.  On these facts, the First Circuit noted that although "nothing in the . . . affidavit excluded the possibility that the marijuana may have come from some place other than the [defendant's] residence[,] . . . viewing the totality of the circumstances related in the affidavit, rather than judging bits and pieces of information in isolation, the affidavit was sufficient to support the issuing judge's 'common-sense' determination of probable cause."  *Id.* at 13 (internal citations and quotations omitted).

Indeed, the Fourth Circuit in *Blackwood* upheld a warrant that was based upon only one purchase of narcotics from the defendant's residence by an unidentified individual

acting as an intermediary between a reliable confidential informant and the defendant. 913 F.2d at 139. There, the Court noted that the transaction had occurred in the manner that the informant had described that it would and that, consistent with the description, the affiant had observed the informant go to the intermediary's apartment, the intermediary leave the apartment, enter the defendant's apartment and return to his apartment, and the informant thereafter surrender a package of cocaine. *Id.* at 142. Relying heavily on the affiant's observations, the Fourth Circuit rejected the defendant's probable cause challenge, finding that "[n]one of [the defendant's] contentions cast any serious doubt on whether the magistrate could have concluded that there was a 'fair probability' that cocaine would be found at [the defendant's] residence." *Id.* at 142-43.

Judged against this pertinent, though not controlling, authority, I find that the totality of the circumstances in this case include the following relevant facts. Two different individuals, UP-1 and UP-2, agreed to purchase drugs from "June" at 263 Emerson Street. In the case of UP-1, it was he who suggested that he purchase the drugs from June at that address; in the case of UP-2, it was the informant who suggested that he purchase drugs from June at that address. Each also agreed to purchase the same quantity, a "31," or thirty-one grams of cocaine. Following their discussions with the informant, each entered the agreed-upon address at 263 Emerson Street by knocking on the same door, which Hill affirmed led directly into the downstairs apartment. Both were inside for only a few minutes, and both returned carrying a clear, knotted plastic bag containing approximately thirty-one grams of cocaine. In both instances, the informant and Officer Hill observed the individual enter and exit the apartment, and the informant received the package of narcotics from each individual as soon as he returned

14

to the informant's car upon exiting the apartment.  In neither case, as far as the affidavit discloses, did the individual describe to the informant what had happened inside the apartment.

Several concerns animate this Court's consideration of whether Hill's affidavit establishes probable cause for the warrant.  First is the absence of evidence to show that the unidentified individuals did not possess narcotics when they entered the apartment.  As the affidavit discloses, although the informant was searched for narcotics, neither UP-1 nor UP-2 was searched, presumably because such a search would have revealed that the informant was working with law enforcement.  Although the fact that they were not searched permits the possibility that they possessed the drugs they turned over to the informant before they ever entered the apartment, that possibility is substantially undercut by the unique facts of this case.  Here, on two separate occasions, sixteen days apart, two different individuals agreed to purchase thirty-one grams of cocaine for the informant and, consistent with the agreement, entered and exited the same apartment and thereafter provided him the very quantity of cocaine that he had requested, packaged in a similar fashion.

A second concern is the absence of any information concerning the reliability of either UP-1 or UP-2.  One of the significant purposes that is served by proof of an informant's reliability is to ensure that the informant who provides information about another's alleged criminal activity is not falsifying or misrepresenting that information in order to gain a personal benefit or to jeopardize an individual towards whom he harbors some animosity.  While I remain troubled by the dearth of information concerning what transpired behind the eastern door of 263 Emerson Street, I do not consider significant the possibility that UP-1 or UP-2 were motivated by improper purposes.  Here, UP-1 and UP-2 were each described as an "unwitting" person.

15

"Unwitting," according to its common usage, means "not knowing or aware; unconscious." Webster's New World Dictionary (2d ed. 1984).  In other words, assuming as I do that neither UP-1 or UP-2 knew the informant was acting at the behest of law enforcement, neither would have had any apparent incentive to fabricate the appearance that they had purchased drugs from the downstairs apartment.

The concern that troubles me the most is whether the application provides probable cause to believe that cocaine would be found inside the apartment that UP-1 and UP-2 entered.  Again, the affidavit is absolutely silent as to what transpired during the "few minutes" that UP-1 and UP-2 were inside.  Moreover, whether a few minutes means as few as two or as many as fifteen or more is significant.  If the former, it may be reasonable to conclude that insufficient time existed to obtain the drugs from anywhere other than inside the apartment; if the latter, no such conclusion may be reasonable.  Of course, had the affidavit included descriptions by the individuals to the informant of sales inside the apartment, and had those descriptions been consistent with each other, this concern may have been alleviated.  In the absence of corroborating accounts, however, the question whether probable cause existed to believe that drugs were inside the apartment (rather than in another apartment in the building or in a location outside the apartment, such as a shed or automobile) seems to me to be a much closer one.

Rather than resolving this close question, I turn instead to the applicability of the good faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984).  In sum, I conclude that the outcome of the probable cause challenge is so close, whether or not probable cause is found, that the agents were entitled to rely reasonably upon the issuing judge's determination of that very question.  *See United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir.

16

1995) (acknowledging that question of whether probable cause existed was a close one and upholding search based upon good faith exception); *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.) (declining to resolve difficult question of whether probable cause existed based upon application of the good faith exception), *cert. denied*, 506 U.S. 980 (1992); *United States v. Fama*, 758 F.2d 834, 835 (2d Cir. 1985) (same).

In *Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was based on "objective good faith," even though the warrant itself might ultimately be found to be defective.  468 U.S. at 918-23; *United States v. Salameh*, 152 F.3d 88, 114 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Benedict*, 104 F. Supp. 2d 175, 182 (W.D.N.Y. 2000).  The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity."  *Leon*, 468 U.S. at 919.

The Court in *Leon* identified four situations in which the good faith exception is inapplicable.  Specifically, an executing officer's reliance on a search warrant will not be deemed to have been in good faith:

> (1) where the issuing magistrate had been knowingly misled;
>
> (2) where the issuing magistrate wholly abandoned his or her judicial role;
>
> (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and
>
> (4) where the warrant is so facially deficient that reliance upon it unreasonable.

*Id.* at 923.  *See United States v. Cancelmo*, 64 F.3d at 807 (citations omitted).

Sykes has not offered any evidence to demonstrate that the issuing state court magistrate was knowingly misled or that the warrant was facially deficient.  Rather, Sykes argues that the warrant application was so lacking in probable cause that reliance upon it was unreasonable.  To the contrary, I find that the question of probable cause was such a close one that the application cannot be viewed as so lacking in indicia of probable cause, if in fact probable cause is lacking at all, that the searching officers acted unreasonably in relying upon it.

Moreover, to the extent Sykes summarily states that the issuing magistrate must have wholly abandoned his judicial role simply because he had previously sentenced Sykes on a prior felony conviction, such claim is unavailing.  Sykes has failed to offer any evidence whatsoever to support his assumption.  It is therefore the recommendation of this Court that Sykes's motion to suppress evidence seized from 263 Emerson Street on the grounds that the search warrant was unsupported by probable cause be denied.  *See United States v. Williams*, 181 F. Supp. 2d 267, 276 (S.D.N.Y. 2001) (*Leon* applies to preserve evidence from suppression in federal prosecution notwithstanding previous decision by state court suppressing the same evidence).

## **CONCLUSION**

For the foregoing reasons, it is my recommendation that defendant's motions to suppress evidence seized from 263 Emerson Street because the search warrant lacked probable cause  **(Docket # 18)** be **DENIED**.

_s/Marian W. Payson_

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
          October  27   , 2005.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
October  27 , 2005.

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).