UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

TERRANCE SYKES,

                Defendant.

_____

DECISION & ORDER and
REPORT & RECOMMENDATION

05-CR-6057T


## PRELIMINARY STATEMENT

By Order of Hon. Michael A. Telesca, United States District Judge, dated October 4, 2005, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 34).

Defendant Terrance Sykes (hereinafter "Sykes") is charged in a three-count indictment.  The first count charges Sykes with possessing with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  The second count charges Sykes with possessing in excess of five grams of cocaine base, in violation of 21 U.S.C. § 844(a).  The final count charges Sykes with possessing a firearm in furtherance of the drug trafficking crimes charged in the previous counts, in violation of 18 U.S.C. § 924(c)(1).  All offenses are alleged to have occurred on or about October 28, 2004.  (Docket # 1).

As explained in this Court's Report and Recommendation dated October 27, 2005, Sykes was initially prosecuted in Monroe County Court for state crimes arising from the same facts that underlie this federal prosecution.  On October 28, 2004, law enforcement officers

executed a search warrant for Sykes's downstairs apartment at 263 Emerson Street in the City of Rochester.  As a result of evidence seized during that search, Sykes was thereafter indicted by a New York State grand jury for various narcotics offenses.  Sykes challenged the lawfulness of the search warrant, and Acting Monroe County Court Judge John R. Schwartz found that it lacked probable cause.  Judge Schwartz therefore suppressed the evidence seized from Sykes's apartment.

On April 14, 2005, one week following the suppression of evidence in state court, Sykes was indicted on the pending federal charges.  Pursuant to this Court's scheduling order, on July 14, 2005, Sykes filed his initial pretrial motions, which included a motion to suppress evidence seized from his apartment on the grounds that the search warrant lacked probable cause. (Docket # 18).  The government conceded that it would lack sufficient evidence to prosecute Sykes if his probable cause challenge were successful.  In view of that concession and with the parties' agreement, this Court first addressed the issue of probable cause for the search warrant. (Docket # 37).  By Report and Recommendation issued on October 27, 2005, I recommended that Sykes's motion be denied.  United States District Judge Michael A. Telesca affirmed that recommendation, concluding that regardless of whether the warrant lacked probable cause, suppression in federal court was not warranted due to the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984), which was unavailable in New York State court.  *See People v. Bigelow*, 497 N.Y.S.2d 630, 637 (1985).  (Docket # 71).

This Court now turns to Sykes's remaining motions.  Currently pending for Decision and Order are Sykes's motions for a *Franks* hearing and for disclosure of grand jury

minutes.  Also pending for Report and Recommendation are Sykes's motions to suppress

statements and tangible evidence and to dismiss the indictment.[1]  (Docket ## 18, 75).

## FACTUAL BACKGROUND

On May 1, 2006, this Court conducted an evidentiary hearing on Sykes's motions

to suppress statements and tangible evidence.[2]  Officer Scott Hill and Sergeant Brett Sobieraski

of the Rochester Police Department testified on behalf of the government.  (Docket # 79).  No

witnesses were called on behalf of the defense.

### Testimony of Officer Hill

Officer Hill testified that in October 2004, he applied for and received a search

warrant for the downstairs apartment at 263 Emerson Street in the City of Rochester.  (Tr. 9).[3]

According to Hill, 263 Emerson Street is a two-family dwelling, containing separate downstairs

---

[1]  Sykes's omnibus motion also sought, *inter alia*, discovery and inspection, rulings on evidentiary matters under rules 404, 608 and 609 of the Federal Rules of Evidence, disclosure of expert witnesses, *Brady* material and *Jencks* material.  (Docket # 18).

Following the issuance of this Court's Report and Recommendation, Sykes requested and was appointed new counsel on two separate occasions.  (Docket ## 52, 70).  Thereafter, Sykes filed supplemental motions seeking, *inter alia*, a bill of particulars, identification of the quantity of narcotics charged, disclosure of the government's witness list and the preservation of rough notes.  (Docket # 75).

Each of the above requests was either resolved by the parties, withdrawn or decided by the undersigned on August 4, 2004 or May 1, 2006.  (Docket ## 24, 25, 77, 78).

[2]  Post-hearing submissions were filed by both parties.  (Docket ## 83, 87).  Sykes filed his submission on June 26, 2006, and time thus was excluded under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(F) and (h)(1)(J) until July 26, 2006.

[3]  The transcript of the suppression hearing conducted before this Court on May 1, 2006, shall hereinafter be referenced as "Tr. __."  (Docket # 79).

and upstairs apartments.  Each apartment is accessible through a separate door.  (Tr. 10).

Following the issuance of the search warrant, Hill assisted in the execution of that warrant on

October 28, 2004.  When he arrived at 263 Emerson Street, Hill observed a white GMC

Suburban parked in the driveway.  Hill later learned that there was also a blue Buick Skylark

parked in the rear yard.[4]  (Tr. 11).  The yard, Hill testified, was surrounded by a fence and a

earthen berm that delineated the property from those adjacent to it.  (Tr. 24).

When the searching officers entered the residence, a black male, later identified as

Sykes, was observed running from the front living room towards the back of the apartment and

into a bedroom.  Officers Simpson and Alvarado followed Sykes into the bedroom, ordered him

to the floor and handcuffed him.  Sykes was then brought back into the living room where he was

seated in a chair.  (Tr. 12-13).  As the officers removed Sykes from the bedroom, they discovered

under him a white plastic sandwich bag containing a large quantity of narcotics.  (Tr. 15).  Also,

during the initial search of the apartment, various narcotics, narcotics paraphernalia and a

shotgun were discovered.  (Tr. 15).

As the search of the apartment was being conducted, Special Agent Timothy

Kernan of the Drug Enforcement Agency approached Sykes and asked him whether there was

any other evidence present before they "tear up" the apartment.  (Tr. 14, 36).  Sykes responded

that there was money in the living room heat register located under the carpet.  The officers then

moved the carpet and discovered a heat register with thousands of dollars stored inside.  (Tr. 14).

On cross-examination, Hill testified that officers executing a warrant typically search heat

---

[4] Officer Hill originally referred to the vehicle parked in the backyard as a blue "GM vehicle" (Tr. 11), but later identified the vehicle as a Buick Skylark (Tr. 19).

registers and look under carpeting and that they "quite regularly find weapons, narcotics hidden

in heat ducts and heat registers."  (Tr. 37).  Sykes was not advised of his *Miranda* warnings prior

to his exchange with Agent Kernan.  (Tr. 32).

In addition to the disclosure of the narcotics in the living room, Sykes also

reported to Kernan that there were "a few ounces" of narcotics in the car in the backyard.  (Tr.

14-15).  The officers then searched the Suburban parked in the driveway and located a small

quantity of cocaine, as well as large quantity of cash.  (Tr. 19).  Afterwards, the officers searched

the Buick Skylark that was parked in the backyard.  (Tr. 19-20).  Inside the trunk of the Skylark

was a box holding several clear, knotted plastic bags containing cocaine.  (Tr. 21-22).  Following

the searches, the two vehicles were taken into custody and towed to the impound lot.  (Tr. 18).

Hill indicated that had he not searched the vehicles while still at the residence, he would have

had them towed to the Monroe County Public Safety Building in any event and then applied for a

warrant to search them.  (Tr. 61).

Hill further testified that during conversations with Sykes, Sykes indicated that he

had keys to the upstairs apartment and that he used the apartment as a sound recording office.

Sykes provided the keys to the officers and told them they could look in the apartment if they

wanted.  (Tr. 38).  One of the searching officers then went into the upstairs apartment, confirmed

that it contained electronic equipment and secured the premises.  (Tr. 40).

**Testimony of Sergeant Sobieraski**

Sergeant Sobieraski testified that on October 28, 2004, he supervised the

execution of the search warrant for 263 Emerson Street and that, later that day, he processed

Sykes at the Monroe County Public Safety Building following his arrest.  (Tr. 75-76).  It was

Sobieraski's understanding that prior to booking, Sykes had been advised by other officers of his

*Miranda* rights and that he had refused to waive his rights and had requested the assistance of

counsel.[5]  (Tr. 77-78).  Following the booking process, Sobieraski escorted Sykes to a holding

cell.  During the approximately three-minute walk, Sobieraski stated to Sykes, "I just want to let

you know that if you choose to cooperate somewhere down the line, that, you know, that may be

a benefit to you."  (Tr. 78, 87).  Sykes replied by stating, "The only thing I know for sure is that

you ran up into my house today and found a whole lot of dope."  (Tr. 79, 85).  Sobieraski did not

ask any follow-up questions in response to Sykes's statement and continued to escort Sykes to

the holding cell.  According to his testimony, Sobieraski was not trying to elicit a statement from

Sykes, but only wanted to "plant a seed" so that Sykes would consider cooperating.  (Tr. 79-80).

## **DECISION AND ORDER**

Sykes has requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154

(1978), relating to the veracity of Officer Hill's affidavit offered in support of the search warrant

for Sykes's apartment.  In addition, Sykes also moves for disclosure of grand jury minutes.  For

the following reasons, Sykes's motions are denied.

---

[5]  Although Sobieraski indicated on cross-examination that he was not certain whether Sykes had requested
an attorney (Tr. 83), the government has introduced no evidence that Sykes had waived his *Miranda* warnings.

A. __Franks Hearing__

As explained in more detail in this Court's October 27, 2005 Report and Recommendation (familiarity with which is assumed), the search warrant for Sykes's apartment was based upon the application of Rochester Police Officer Scott Hill.  Hill's application detailed two controlled purchases of cocaine.  On each occasion, Hill met with a confidential informant of known reliability and provided the informant with money for the purpose of conducting a controlled purchase of cocaine from Sykes.  Instead of performing the controlled purchase directly, however, the informant solicited the assistance of two different "unwitting persons." According to Hill's affidavit, the informant reported to him that the unwitting persons purchased the cocaine from Sykes's apartment and provided the narcotics to the informant, who in turn provided the drugs to Officer Hill.  (*See* Docket # 37).

In his previously rejected probable cause challenge, Sykes argued that the search warrant for his apartment was unsupported by probable cause because it was based upon information provided by the unidentified unwitting persons whose reliability and credibility had not been established.  (Docket # 18).  Although that motion was denied (Docket # 71), still pending is Sykes's similar motion for a *Franks* hearing.  Following oral argument of the original motions, Sykes submitted an affidavit refuting the factual assertions in Hill's search warrant affidavit.  Specifically, Sykes denied that he ever sold cocaine from his residence on the dates specified in Hill's affidavit or that he admitted any "unwitting persons" (who remain unidentified) into his apartment on those dates.  (Docket # 27).

Under the Supreme Court's holding in *Franks v. Delaware*, "a district court may not admit evidence seized pursuant to a warrant if the warrant was based on materially false and

7

misleading information." *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (citing

*Franks v. Delaware*, 438 U.S. at 154), *cert. denied*, 507 U.S. 954 (1993).  To warrant a *Franks*

hearing, a defendant challenging an affidavit must make "a substantial preliminary showing that

(1) the affidavit contained false statements made knowingly or intentionally, or with reckless

disregard for the truth; and (2) the challenged statements or omissions were necessary to the

Magistrate's probable cause finding." *Id.* (citing *Franks*, 438 U.S. at 171-72) (internal quotation

omitted).  A hearing is required if the defendant provides the court with a sufficient basis upon

which to doubt the truth of the affidavit at issue.  As the Supreme Court has explained:

> To mandate an evidentiary hearing, the challenger's attack must be
> more than conclusory and must be supported by more than a mere
> desire to cross-examine.  There must be allegations of deliberate
> falsehood or of reckless disregard for the truth, and those
> allegations must be accompanied by an offer of proof.  They should
> point out specifically the portion of the warrant affidavit that is
> claimed to be false; and they should be accompanied by a
> statement of supporting reasons.  Affidavits or sworn or otherwise
> reliable statements of witnesses should be furnished, or their
> absence satisfactorily explained.  Allegations of negligence or
> innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

"Unsupported conclusory allegations of falsehood or material omission cannot

support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations

accompanied by an offer of proof." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994); *see*

*United States v. Orozco-Prada*, 732 F.2d 1076, 1089 (2d Cir.) (affirming denial of *Franks*

hearing on grounds that defendant failed to submit sworn or otherwise reliable statement of a

witness), *cert. denied*, 469 U.S. 845 (1984).  Even if Sykes's fairly conclusory assertions were

considered adequately specific, they do not justify a *Franks* hearing.

A *Franks* hearing is not required when it is sought merely on the basis of an allegation that the information in the search warrant affidavit subsequently proved to be inaccurate, especially when that information derives from a source independent of the affiant. *See Franks*, 438 U.S. at 171 ("[t]he deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant"); *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995) (defendant not entitled to *Franks* hearing based upon showing that informant knowingly or recklessly made false statement to affiant as long as affiant in good faith represented what the informant said), *cert. denied*, 517 U.S. 1187 (1996); *United States v. Cook*, 348 F. Supp. 2d 22, 29-30 (S.D.N.Y. 2004) (denying *Franks* hearing based upon argument that informant had provided false information because defendant had not demonstrated that affiant made false statement or acted with reckless disregard for truth); *United States v. Hennings*, 1997 WL 714250, *6 (W.D.N.Y. 1997) (rejecting motion for *Franks* hearing based upon assertion that confidential informant had not provided a truthful report because "an attack on the informant's statements is permitted only for the purpose of demonstrating misstatements made by the government").  Here, Sykes essentially challenges the veracity of the information reported to Hill by the informant about his dealing with the "unwitting persons."

Sykes simply has not come forward with any facts to suggest that Hill should have doubted the accuracy of the informant's information or veracity.  *See United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true'") (quoting *Franks*, 438 U.S. at 165), *cert. denied*, 498 U.S. 866 (1990).  To the contrary, Hill's affidavit sufficiently disclosed that his belief that evidence of narcotics trafficking would

be discovered in Sykes's apartment was based primarily upon the actions of the two unwitting

persons, which were facilitated and monitored by a reliable informant.[6]  Although Hill could not

have known anything about the reliability of the unwitting persons, that fact was readily apparent

from the face of his affidavit.  Finding no basis to question the veracity of Hill's representations

in his affidavit, I recommend that Sykes's motion for a *Franks* hearing be denied.


## B.  Disclosure of Grand Jury Minutes

Sykes also seeks the disclosure of grand jury minutes because he believes that the

pending Indictment "may have been procured by fraud, perjury, or other conduct taken in bad

faith by the Government."  (Docket # 75 at 10).  A presumption exists, however, that grand jury

proceedings are lawful and regular, *United States v. Torres*, 901 F.2d 205, 232-33 (quoting

*Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974)), *cert. denied*, 498 U.S. 906 (1990)), and

disclosure of grand jury proceedings is available only by order of the court.  Fed. R. Crim. P.

6(e).  A party seeking disclosure bears the burden of establishing a "particularized need" or

"compelling necessity" for such disclosure that outweighs the policy of grand jury secrecy.

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 216 (1979); *Pittsburgh*

*Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).  Non-specific allegations of

impropriety or mere speculation are insufficient to satisfy this heavy burden.  *United States v.*

*Calandra*, 414 U.S. 338, 345 (1974).  Therefore, "review of grand jury [proceedings] is rarely

---

[6]  The affidavits reveal that the informant observed the unwitting persons enter the door to Sykes's
apartment, but did not observe what transpired inside the location.

permitted without specific factual allegations of governmental misconduct." *United States v. Torres*, 901 F.2d at 233.

In this case, Sykes has failed to present the Court with any specific factual allegations suggesting misconduct by the government during the grand jury proceedings. Sykes thus has not satisfied his burden of establishing a particularized need or compelling necessity for their disclosure. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. at 400. Accordingly, Sykes's motion is denied.


## REPORT AND RECOMMENDATION

Before this Court for Report and Recommendation are Sykes's motions to suppress statements and tangible evidence. Also pending are Sykes's motions to dismiss the Indictment on the grounds of double jeopardy and vindictive prosecution.


### A. Suppression of Statements

Sykes moves to suppress the statement he made to Sergeant Sobieraski while walking to the holding cell in the Monroe County Public Safety Building.[7] Sykes contends that the government violated his constitutional rights by eliciting a statement from him after he had

---

[7] Sykes also moved to suppress statements he made to Agent Kernan while in his apartment concerning the location of narcotics in two automobiles. (Docket # 18). The government, however, has conceded the suppression of such statements. (Tr. 5).

Sykes's motion papers are unclear whether he seeks to suppress the currency located in the heat register as "fruit of the poisonous tree," that is, as fruit of his statement that the officers would find money in the heat register. (Tr. 14). Insofar as Sykes presses this contention, I find that the money inevitably would have been discovered during the search. Hill testified that officers routinely search heat registers and under carpeting and "quite regularly" find evidence in those locations. (Tr. 37).

requested the assistance of counsel.  (Docket # 87).  The government opposes Sykes's motion, arguing that he had not been subjected to interrogation.  (Docket # 83).

According to the testimony offered before this Court, Sykes was arrested during the execution of the search warrant for his apartment and transported to the Public Safety Building.  (Tr. 77).  After processing Sykes, Sobieraski escorted him to the holding cell, which was approximately a three-minute walk.  (Tr. 78).  At the time, Sobieraski understood that other officers had advised Sykes of his *Miranda* rights and that Sykes had refused to waive such rights and had requested the assistance of counsel.  (Tr. 77-78).  While walking, Sobieraski stated to Sykes, "I just want to let you know that if you choose to cooperate somewhere down the line, that, you know, that may be a benefit to you."  (Tr. 78, 87).  Sykes replied, "The only thing I know for sure is that you ran up into my house today and found a whole lot of dope."  (Tr. 79, 85).  Sobieraski did not respond to that statement, nor did he ask any follow-up questions. Sobieraski explained that he was not trying to elicit a statement from Sykes, but wanted to "plant a seed" with the hope that "somewhere down the line [Sykes] would choose to cooperate."  (Tr. 79-80).

It is, of course, well-settled that statements made during custodial interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right.  *Id.* at 444.

12

The government does not contest that Sykes was in custody at the time his statement was made, and I find that he clearly was.  Thus, the question remaining is whether the statement was made in response to interrogation by Sobieraski.  "'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).  Interrogation includes direct questioning, as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect," *Rhode Island v. Innis*, 446 U.S. at 301, or that would "produce psychological pressures that [would] subject the individual to the 'will' of his examiner." *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (citations omitted).  *See also United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992); *United States v. Thomas*, 961 F. Supp. 43, 44-45 (W.D.N.Y. 1997).

Generally excepted from the *Miranda* requirements are statements spontaneously made by a defendant.  The Supreme Court has established that statements made by a defendant that are not elicited in response to interrogation do not violate the Fifth Amendment.  *See Innis*, 446 U.S. at 299-300.  As the Court has reasoned:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.  The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . .  Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Miranda v. Arizona*, 384 U.S. at 478; *see also Innis*, 446 U.S. at 299-300; *United States v. Vasta*, 649 F. Supp. 974, 987 (S.D.N.Y. 1986).

In *United States v. Montana*, 958 F.2d 516 (2d Cir. 1991), the Second Circuit determined that a similar statement by a law enforcement officer about the benefits of cooperation constituted "interrogation." There, the defendant was arrested following his involvement in a controlled narcotics delivery. After his arrest, the defendant was advised of his *Miranda* rights, which he acknowledged only by nodding his head, and he made no statement of any kind. The defendant was later driven to the courthouse for arraignment. During the ride, an agent told the defendant that he could help himself by cooperating. The defendant then asked who would take care of his family. The Second Circuit affirmed the exclusion from evidence of the defendant's statement, finding that the agent's unsolicited comment about the benefit of cooperation constituted interrogation. *Id.* at 518 (citing *United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir. 1986) (finding statement that cooperation would be beneficial was interrogation)). The court further noted the agent's acknowledgment that statements about cooperation are used to elicit incriminating statements. *Id. See also United States v. Dell'Aria*, 811 F. Supp. 837, 844-45 (E.D.N.Y.) (arresting officer's advice for defendant to give "some serious thought to how he wanted to conduct himself and cooperate with the authorities" deemed interrogation), *aff'd*, 14 F.3d 591 (2d Cir. 1993); *United States v. Ferrara*, 990 F. Supp. 146, 155 (E.D.N.Y. 1998) (officer's unsolicited advice to the defendant that he should cooperate deemed interrogation).

Conceding that this issue is a "close call," the government argues that Sykes's statement was voluntarily made because Sobieraski did not intend to elicit any statement at that

time.[8]  (Docket # 83 at 2).  In support of its argument, the government cites *United States v.*
*Guido*, 704 F.2d 675, 677 (2d Cir. 1983), and *United States v. Miller*, 116 F.3d 641, 680 (2d Cir.
1997), *cert. denied*, 524 U.S. 905 (1998).  Both cases are inapposite to the matter at hand.  In
*United States v. Guido*, the Second Circuit found that an agent's discussion of the benefits of
cooperation did not elicit the defendant's statement because the agent also advised the defendant
that he would not be questioned at that time and instructed him to discuss the possibility of
cooperation with his attorney.  *United States v. Guido*, 704 F.2d at 677.

In *United States v. Miller*, the agent advised the defendant of the benefits of
cooperation in response to the defendant's inquiry regarding the possible penalties he was facing,
and prior to advising him of his *Miranda* warnings, which the defendant then refused to waive.
Several minutes later, the defendant made an unsolicited, incriminating statement.  The Second
Circuit determined that the agent's statement did not constitute interrogation because it was
solicited by the defendant's own question.  The admission was further admissible, the Court
reasoned, because "it was made only after *Miranda* warnings had been administered and was
made without any post-*Miranda*-warning interrogation."  *United States v. Miller*, 116 F.3d at
680.

In this case, Sobieraski's statement regarding the benefits of cooperation was not
made in response to any question by Sykes, nor, as acknowledged by the government (Docket #
83 at 3), accompanied by any statement that Sykes would not be questioned at that time or that he
should consult with an attorney.  I therefore find that Sobieraski's statement, like the agent's

---

[8] Of course, the agent's subjective intention is irrelevant; the question is whether the officer "should know"
that the statement is "<u>reasonably</u> likely to elicit an incriminating response."  *Innis*, 446 U.S. at 301 (emphasis added).

statement in *Miller*, reasonably should have been expected to elicit an incriminating response from Sykes, and thus should be considered "interrogation."  Accordingly, it is my recommendation that Sykes's statement – "[t]he only thing I know for sure is that you ran up into my house today and found a whole lot of dope" – be suppressed.

**B.   Suppression of Tangible Evidence**

Sykes also moves to suppress the evidence seized from the GMC Suburban and Buick Skylark, which were located in the driveway to his apartment and in the backyard, respectively.  According to Sykes, the automobiles were not within the scope of the search warrant, and thus the search of the vehicles was unauthorized.  (Docket ## 75, 87).  The government opposes Sykes's motion, arguing that he has failed to establish standing to challenge the search of the vehicles.  Alternatively, the government argues that even if Sykes has standing, the vehicles were located within the curtilage of the apartment, and their search was thus authorized by the search warrant.  (Docket ## 76, 83).

**1.   Standing to Contest Search of Automobiles:**  A defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched.  *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993); *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).  This expectation of privacy must be both subjectively and objectively reasonable – that is, the defendant must have a subjective expectation of privacy and that expectation must be one that is deemed objectively reasonable by society at large.  *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997); *United States v. Osorio*, 949 F.2d at 40.  Courts

16

generally evaluate standing by considering "whether the defendant had any property or possessory interest in the place searched or the items seized." *Id.* (citations omitted).

As noted above, the burden of establishing standing falls squarely upon the defendant. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge. A defendant's unsworn assertion of the Government's representations does not meet this burden." *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted).

In this case, Sykes has not submitted an affidavit, either by himself or someone else with personal knowledge, to satisfy his burden of demonstrating standing. On the date scheduled for the suppression hearing of Sykes's motions, counsel indicated that it was "relying on the theory that the Government is saying that it is Mr. Sykes' vehicle, they intend to introduce that evidence against him." (Tr. 6). After a short colloquy, this Court discussed with Sykes's counsel the general requirement that an affidavit be submitted by someone with personal knowledge and afforded Sykes one week to submit an affidavit. The scheduled suppression hearing went forward upon the assumption that Sykes would thereafter submit an affidavit establishing standing. (Tr. 7). Sykes failed, however, to submit such an affidavit and, in his post-suppression hearing memorandum, argues that his standing to contest the search of the vehicles was adequately established through the testimony of Officer Hill at the suppression hearing. (Docket # 87). Specifically, Sykes cites testimony in which Hill stated that he obtained the keys to the Suburban from inside Sykes's apartment and that Sykes was the registered owner of the Skylark. (Tr. 50, 71).

I find that Sykes has not met his burden of establishing standing to challenge the search of the automobiles.  It would be unfair and illogical to allow the defendant to rely upon testimony offered by government witnesses at a suppression hearing to which he would never have been entitled in the first place.  *See United States v. Montoya-Eschevarria*, 892 F. Supp. at 106 (defendant cannot establish standing by relying upon the government's representations).  For this reason, I find that Sykes has failed to satisfy his burden of establishing standing to challenge the search of the automobiles.

Even if he could, I find that the search of the automobiles was within the scope of the warrant that authorized a search of the premises "to include all its storage areas and curtilage."  *See*, *e.g.*, *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990) (warrant for premises "generally includes any vehicles located within its curtilage"); *United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985) ("search warrant authorizing a search of a particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises"); *United States v. Bulgatz*, 693 F.2d 728, 730 n.3 (8th Cir. 1982) (warrant for house authorized search of car parked in attached garage), *cert. denied*, 459 U.S. 1210 (1983); *United States v. Freeman*, 685 F.2d 942, 955 (5th Cir. 1982) (search warrant for residence justified search of vehicle located on premises); *United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir.) (search warrant for residence authorized search of camper parked in driveway), *cert. denied*, 429 U.S. 920 (1976).

In the case at bar, Officer Hill testified that the Buick Skylark was located in the backyard of 263 Emerson Street and the GMC Suburban was parked in the driveway; he further testified that Sykes had keys to the Buick and that the Buick was registered to Sykes.  (Tr. 15, 21,

18

51, 57, 71).  In addition, Hill testified that the informant who had utilized the "unwitting

persons" to buy cocaine from Sykes had advised "that the white Suburban was being used to

deliver cocaine" (Tr. 45); Hill also testified that he had seen the Suburban parked in Sykes's

driveway on previous occasions as he conducted surveillance in connection with the

investigation.  (Tr. 60).  On these facts, I find that the cars searched were within the curtilage of

the premises for which the search was authorized and that the searching officers were reasonable

in their belief that objects of the search might be located therein.  *See United States v. Gottschalk*,

915 F.2d at 1461.

       In sum, because I find that Sykes has failed to demonstrate standing to challenge

the searches, and alternatively because I find that the searches were authorized by the warrant, I

recommend that Sykes's motion to suppress evidence seized from the two automobiles be

denied.

## C.  Dismissal of the Indictment

       Sykes moves for the dismissal of the pending Indictment on the grounds that it is a

violation of double jeopardy and that it results from vindictive prosecution.  (Docket ## 18, 75).

       **1.  Double Jeopardy:**  Sykes argues that the instant federal prosecution, which

arises out of the same facts and circumstances as the state court charge, violates the double

jeopardy clause of the Fifth Amendment to the United States Constitution.

       Although Sykes acknowledges that the principle of dual sovereignty generally

does not bar successive prosecutions by state and federal prosecutors, *see United States v. Sewell*,

252 F.3d 647, 651 (2d Cir.), *cert. denied*, 534 U.S. 968 (2001) (under duel sovereignty doctrine,

successive state and federal prosecutions based upon same robbery are not barred by double jeopardy), he contends that in this case, the "state authorities acted as a tool of the federal government and the [federal] prosecution is merely a 'sham and cover' for the unsuccessful state court prosecution." (Docket # 18 at 5).  *See Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959) (rejecting double jeopardy argument because state prosecution was not a sham and cover for federal prosecution).

This Court need not consider the merits of Sykes's argument, however, because the double jeopardy clause is simply not applicable in this case.  Jeopardy, for purposes of the Fifth Amendment, does not attach "until the jury has been empaneled and sworn, and is thus competent to dispense a judgment of guilt."  *United States v. White*, 980 F.2d 836, 842 (2d Cir. 1992); *see Crist v. Bretz*, 437 U.S. 28, 38 (1978) ("jeopardy attaches when jury is empaneled and sworn").

In this case, Sykes was originally indicted and prosecution initiated in state court. That prosecution was dismissed, however, following the state court's pre-trial suppression of evidence seized from Sykes's apartment.  No trial was conducted, and no jury was empaneled or sworn.  Thus, Sykes was never placed in jeopardy, and the double jeopardy clause may not be invoked.  It is therefore my recommendation that Sykes's motion to dismiss based upon a violation of the double jeopardy clause be denied.

To the extent that Sykes argues that this prosecution is barred under the due process clause by principles of collateral estoppel, such claim is equally unavailing.  Under the doctrine of collateral estoppel, "a non-party to an action can be bound by the determination of issues decided in that action if it 'controls or substantially participates in the control of the

presentation on behalf of a party.'"  *United States v. Davis*, 906 F.2d 829, 833 (2d Cir. 1990)

(quoting Restatement (Second) of Judgments § 39 (1982)).  Although the Second Circuit has

recognized the application of collateral estoppel in criminal cases, it has also noted that, "no

court has applied collateral estoppel to bar relitigation of a suppression issue in a later proceeding

by a different sovereign." *Id*.  According to the court, the fact that the state and federal

governments are not just different parties, but different sovereigns, generally forecloses the use of

collateral estoppel to bar a second prosecution except in "the most unusual circumstances." *Id.*

The pivotal question is not, as Sykes contends, whether state and federal investigators operated

within a joint task force, but whether there was a "significant relationship" between the state and

federal prosecutors such that the federal sovereign's interest would have been represented during

the state court proceeding. *Id*. at 834.  "At a minimum, it must be shown that federal prosecutors

actively aided the state prosecutors during the local suppression hearing." *Id*. at 835.

       Here, Sykes has offered no evidence to suggest that federal prosecutors were in

any way involved in his state court prosecution, including determination of his suppression

motion, and thus the United States cannot be said to have had its day in court.  It is therefore my

recommendation that Sykes's motion to dismiss the Indictment pursuant to the due process

clause be denied.

       **2.  <u>Vindictive Prosecution</u>:**  Sykes also seeks dismissal of the Indictment on the

grounds of vindictive prosecution.  Sykes claims that the government only decided to initiate this

litigation in an effort to retaliate against him for exercising his constitutional right to seek the

suppression of evidence in state court.  (Docket # 75).

The government has broad discretion in making charging decisions,

*Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978); *United States v. White*, 972 F.2d 16, 18 (2d

Cir.), *cert. denied*, 506 U.S. 1026 (1992), and an indictment will not be dismissed for vindictive

prosecution unless there is "a finding of 'actual' vindictiveness, or if there is a presumption of

vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's

action." *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir.) (quoting *United States v. Johnson*,

171 F.3d 139, 140 (2d Cir. 1999)), *cert. denied*, 531 U.S. 1015 (2000).

(a) *Sykes Has Not Submitted Evidence of Actual Vindictiveness:*  Actual

vindictiveness can be establish by demonstrating that "(1) the prosecutor harbored genuine

animus toward the defendant, or was prevailed upon to bring the charges by another with animus

such that the prosecutor could be considered a 'stalking horse' and (2) he would not have been

prosecuted except for the animus." *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999), *cert.*

*denied*, 530 U.S. 1222 (2000) (quotation and citations omitted).  In this case, Sykes has presented

absolutely no evidence to demonstrate animus on the part of the government or that any such

animus was the reason for the filing of the Indictment.

(b) *No Presumption of Vindictiveness Exists:*  To demonstrate a

presumption of vindictiveness, a defendant must show that the circumstances of the case create

"a realistic likelihood of vindictiveness that would be 'applicable in all cases.'" *United States v.*

*Sanders*, 211 F.3d at 716 (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)); *see also*

*United States v. Johnson*, 171 F.3d at 141.  Such a presumption of vindictiveness generally does

not arise in the pre-trial setting; rather, it more often arises where a change is made in a charging

decision following the completion of an initial trial.  *United States v. Hinton*, 703 F.2d 672, 678

22

(2d Cir.), *cert. denied*, 462 U.S. 1121 (1983).  Moreover, the presumption may be "overcome by objective evidence justifying the prosecutor's action."  *United States v. Sanders*, 211 F.3d at 717.

As noted, Sykes argues that a presumption of vindictiveness arises in this case solely because the present charge was not brought until after the suppression of evidence and dismissal of his state court prosecution.  This record does not justify a presumption of vindictiveness.  Indeed, the Second Circuit specifically has held that a presumption of vindictiveness does not arise simply as a result of the initiation of two separate prosecutions brought by separate sovereigns acting independently under their own laws.  *United States v. Ng*, 699 F.2d 63, 68 (2d Cir. 1983).

Accordingly, it is the recommendation of this Court that Sykes's motion to dismiss the Indictment for vindictive prosecution be denied.


**D.  Speedy Trial**

In addition to the above, Sykes has also filed numerous *pro se* submissions.  Within his *pro se* submissions, he has reiterated many of the arguments asserted by counsel, which have been addressed throughout this opinion.  In addition, Sykes also has repeatedly claimed that he has been denied his right to a speedy trial.

The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).  The Act also provides for the exclusion of certain periods from the calculation of the seventy-day limit.  18 U.S.C. § 3161(h)(1)-(8); *United States v. Zedner*, __ U.S. __, 126 S.Ct. 1976, 1983 (2006); *United States v. Pena*, 793 F.2d 486, 488 (2d Cir. 1986).  One of the authorized exclusions, commonly known as an "interests of justice" exclusion, provides for an exclusion for "[a]ny period of delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(8).  Also, Section 3161(h)(1)(F) excludes periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(F).  Once a motion is under advisement by the Court, the Act affords an excludable period of up to thirty days for the court to decide the motion.  18 U.S.C. § 3161(h)(1)(J).

I have carefully reviewed the record in this matter and find that Sykes's motion is wholly without merit.  Although there have been various periods of delay since the filing of the original indictment, the majority of those periods have been attributable to the various pretrial motions filed by Sykes, as well as to his multiple requests for new counsel.  I further find that any remaining periods excluded under the Speedy Trial Act have been properly excluded.

## CONCLUSION

For the foregoing reasons, it is my Decision and Order that defendant's motions for a *Franks* hearing and for disclosure of grand jury minutes **(Docket ## 18, 75)** is **DENIED**.  It is also my Report and Recommendation that defendant's motions to suppress tangible evidence

**(Docket # 75)** and to dismiss the Indictment **(Docket ## 18, 75)** be **DENIED**.  Finally, it is my

further Report and Recommendation that the district court **GRANT** defendant's motion to

suppress the statement, "The only thing I know for sure is that you ran up into my house today

and found a whole lot of dope."  **(Docket # 18)**.

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      July 31, 2006.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[9]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
July 31, 2006.

---

[9] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).