UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

-vs-

TERRANCE SYKES,
                Defendant
_____

DECISION AND ORDER

05-CR-6057 CJS
10-CV-6172

APPEARANCES

For Defendant:         Terrance Sykes, *Pro se*
                            14552055
                            U.S. Penitentiary
                            P.O. Box 2000
                            Bruceton Mills, West Virginia 26525

For the United States:    Bret Puscheck, Esq.
                            Assistant United States Attorney
                            100 State Street, Room 620
                            Rochester, New York 14614

INTRODUCTION

Now before the Court is Terrance Sykes' ("Defendant" or "Sykes") *pro se* application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the application is denied.

28 U.S.C. § 2255

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence

1

to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255. In other cases, "[a] district court has a wide variety of tools available to it in developing the record during habeas proceedings." *Pham v. United States*, 317 F.3d 178,180 (2d Cir. 2003). Specifically,

> [i]t is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories. After expanding the record, the district court then decides if an evidentiary hearing also is required. Our precedent disapproves of summary dismissal of petitions where factual issues exist, but it permits a 'middle road' of deciding disputed facts on the basis of written submissions.

*Id*. at 184 (citations omitted). On this motion the Court did not conduct a hearing since the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## BACKGROUND

The facts of this case were set forth in detail in the parties' papers[1] and were also discussed by the Second Circuit in its decision affirming Defendant's conviction and sentence, *U.S. v. Sykes*, 07-0505-cr, 304 Fed.Appx. 10, 2008 WL 5246040 (2d Cir. Dec. 17, 2008). For purposes of the instant application, it is sufficient to note the following facts.

Before Sykes was indicted on the pending federal charges, he was prosecuted in Monroe County Court for state crimes arising from the same facts that underlie this federal prosecution. On October 28, 2004, law enforcement officers executed a warrant to search the downstairs apartment of 263 Emerson Street in the City of Rochester. Following the

---

[1] *See, e.g.*, Defendant's Memo [#174-1,2,3], Respondent's Response [#181].

2

search, the matter was presented to a Monroe County, New York State grand jury, and Sykes was indicted on narcotics charges in violation of the New York State Penal Law, namely, one count of criminal possession of a controlled substance in the first degree (N.Y. Penal Law § 221.21[1]), one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 221.16[1]) and three counts of criminal use of drug paraphernalia in the second degree (N.Y. Penal Law § 220.50[1]). Sykes thereafter challenged the lawfulness of the warrant, and, by Decision and Order dated April 7, 2005, Acting Monroe County Court Judge John R. Schwartz determined that the warrant lacked probable cause and suppressed the evidence seized pursuant to the search. The State did not appeal that ruling. One week after that decision Sykes was indicted on the subject federal charges, which are based upon the same acts from which the state charges arose.[2]

On April 14, 2005, a federal grand jury returned a three-count sealed indictment against the Defendant. Count One charged him with possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). Count Two charged him with possession of more than five grams of cocaine base in violation of 21 U.S.C. § 844(a). Count Three charged him with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). In connection with the sealed indictment, an arrest warrant was issued on April 14, 2005.

On September 24, 2005, a superceding indictment was filed against Defendant. The superceding indictment added a fourth count against the Defendant: felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924 (a)(2), with Counts One, Two, and

---

[2]This paragraph was substantially taken from a Report and Recommendation [#37] written by the Honorable Marian W. Payson, United States Magistrate Judge.

3

Three remaining the same as in the original indictment.

On March 22, 2006, the Court denied Syke's motion to suppress the evidence found in his apartment, pursuant to the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984). (Decision and Order of the Honorable Michael A. Telesca, Docket No. [#71]). On September 20, 2006, the Court denied Defendant's motion to dismiss the indictment on grounds of double jeopardy, vindictive prosecution, and denial of speedy trial. (Decision and Order [#113] at 7-9).

On October 5, 2006, a jury found the Defendant guilty on Counts One, Two, and Four, but not guilty of Count Three, of the superceding indictment. On February 12, 2007, the Court, based upon 21 U.S.C. § 841(b)(1)(A), sentenced the Defendant to life imprisonment.[3]

Defendant was represented in his 2005 state- court prosecution by Gary Bitetti, Esq. ("Bittetti"). Defendant was represented in this action by five different attorneys at different times leading up to his trial and appeal. Initially Defendant was represented by Robert Smith ("Smith") of the Office of the Federal Public Defender. Subsequently Defendant retained Donald Thompson, Esq. ("Thompson"), and after Thompson withdrew, Defendant retained Felix Lapine, Esq. ("Lapine"), who also later withdrew, on the grounds that Defendant had filed a grievance against him. The Court then appointed James Wolford, Esq. ("Wolford") who represented Defendant through the completion of the trial, and then was granted permission to withdraw. The Court appointed Scott Green, Esq. ("Green") to

---

[3]Defendant failed to heed the warning of Monroe County Court Judge Frank P. Geraci, Jr., who when sentencing Defendant for prior felony drug convictions on December 18, 2000, stated: "At this point you have amassed a serious record in a short period of time. You have some intelligence. You have just got to determine how you want to use that. If you're going to use it in the drug trade, um, you're going to wind up in either of two results. Either life imprisonment or death." Sentencing Transcript [#22-2] at 4.

4

represent Defendant at sentencing and on appeal.

On his direct appeal Green raised three issues on Defendant's behalf: "(1) the warrant pursuant to which law enforcement searched his residence and vehicle was not supported by probable cause; (2) the vehicle searched by law enforcement was not within the scope of the warrant; and (3) his sentence is unconstitutionally cruel and unusual." *U.S. v. Sykes*, 304 Fed.Appx. 10, 11, 2008 WL 5246040 at *1 (2d Cir. Dec. 17, 2008). Defendant submitted a *pro se* supplemental brief raising five additional arguments: 1) due process/double jeopardy clauses barred successive prosecution; 2) search was invalid because federal agent participated in search; 3) New York Criminal Procedure Law § 160.50 barred second prosecution; 4) selective prosecution; and 5) insufficient evidence. *See*, Defendant's Affidavit (Docket No. [# 162] at ¶ 12). In its written opinion, the Circuit Court noted that Defendant's "principal argument [was] that the district court erred in failing to suppress on Fourth Amendment grounds evidence seized as a result of the searches of Defendant's residence and vehicle." *Id*. at *1. The Court affirmed, finding that the search of Defendant's residence was proper, and that regardless of whether the search of the car was proper, any error was harmless. In this regard, the Circuit noted in pertinent part:

> The strength of the Government's case against Sykes was overwhelming. Found in the bag beneath Sykes when he was arrested was enough cocaine alone to meet the threshold for possession with intent to distribute 50 grams or more of a substance containing cocaine base – notwithstanding the almost 700 grams of cocaine Sykes concedes were found elsewhere in the residence. . . . [T]he jury's deliberations were speedy, indicating that they did not appear to regard the case as a "close" one.

*Id*. at *2 (citations omitted). The Circuit Court further found that Defendant's sentence was correct under 21 U.S.C. § 841(b)(1)(A). *Id*. at *2. The Circuit Court further stated, "We have considered all of Syke's other arguments and find them to be without merit," *Id*., presumably

referring to the five arguments which Defendant raised in his *pro se* supplemental brief.[4]

With the assistance of new counsel, Robert C. Brooks, Esq. ("Brooks"), Defendant filed a petition for writ of certiorari to the U.S. Supreme Court, raising a single issue: Whether the district court and circuit court erred in finding that the search warrant was supported by probable cause and/or that the good faith exception applied. Defendant's Memo in Support [#179], Ex. 101. On April 20, 2009, the U.S. Supreme Court denied Defendant's application for writ of certiorari. *Sykes v. U.S.*, 129 S.Ct. 2022 (2009).

On March 29, 2010, Defendant filed the instant application [#174] pursuant to 28 U.S.C. § 2255, along with motions [#176][#177] asking the Court to recuse itself and to release him from custody. The § 2255 petition purports to set forth forty-two (42) grounds for setting aside his conviction, which will be discussed further below. The recusal motion [#177] appears to allege that this Court accepted a bribe from the government in the form of U.S. currency that was seized from Defendant during the execution of a search warrant, which money was administratively forfeited. (*See*, Decision and Order [#170] discussing the circumstances of the forfeiture). On June 18, 2010, Defendant filed a motion [#183] for summary judgment on his § 2255 petition. On December 27, 2010, Defendant filed a combined motion [#186] to dismiss his criminal conviction for lack of jurisdiction pursuant to FRCP 12(b)(3)(B) and to hold his § 2255 petition in abeyance pending resolution of that motion.

DISCUSSION

At the outset Defendant's motions [#176][#177] for recusal and for release are

---

[4] Defendant admits that the Second Circuit considered and rejected the arguments that he raised in his supplemental pro se appeal brief. *See*, Memo in Support of § 2255 Motion p. 302, [#174-3] at 70.

denied, as he has not shown any legitimate basis for such relief.

Defendant next asks the Court to consider and rule upon his motion pursuant to FRCP 12(b)(3)(B) prior to addressing his application under 28 U.S.C. § 2255, since he maintains that this Court lacks jurisdiction. Rule 12(b)(3)(B) states in pertinent part that "the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction," "at any time while the case is pending." Defendant alleges that this Court lacks jurisdiction because the Government obtained an indictment against him without first filing a criminal complaint with the Court:

> How could Ms. Babb [Assistant United States Attorney] proceed to get an indictment without any complaint being filed by a case agent to initiate the court's legal processes and invoke the court's authority in the matter? Ms. Babb clearly acted in the absence of all jurisdiction when instituting the federal charges against the defendant.

Motion pursuant to FRCP 12(b)(3)(B) [#186-2] at ¶ 31. This application must be denied. First, Defendant's 12(b)(3)(B) motion must be denied as untimely, since it was not made while his case was "pending." In that regard, Defendant's direct appeal was denied on December 17, 2008, and his petition for writ of certiorari was denied on April 20, 2009. *See, Chacko v. United States*, No. 96 CR 519 (JGK), 04 Civ. 2258 (JGK), 2005 WL 1388723 at *4 (S.D.N.Y. Jun. 8, 2005) ("Chacko's conviction was affirmed on direct appeal in 1999, and the time for a petition for certiorari has long passed. The case is no longer pending and the Rule 12(b(3) motion is therefore time-barred."). Second, the application would have to be denied even if it was timely, because it plainly lacks merit. *See, e.g., U.S. v. Hernandez*, 330 F.3d 964, 977 (7th Cir. 2003) ("18 U.S.C. § 3231 confers jurisdiction on district courts to try charges framed by federal indictments[.]") (citation omitted); *U.S. v. Thompson*, 319 F.2d 665, 668 n. 4 (2d Cir. 1963) ("Criminal proceedings cannot be said to be brought or

7

instituted until a formal charge is openly made against the accused, either by indictment presented or information filed in court, or, at the least, by complaint before a magistrate.") (citation omitted); *Comer v. U.S.*, Nos. 3:09-CV-1261-N-BH, 3:08-CR-0085-N (01), 2009 WL 5033924 at * 4 (N.D.Tex. Dec. 18, 2009) ("The absence of a criminal complaint does not affect the jurisdiction of the Court," where the defendant was charged in a federal information, waived indictment, and pled guilty.). Accordingly, Defendant's motion [#186] to hold the § 2255 petition in abeyance/to dismiss the action pursuant to FRCP 12(b) is denied.

The Court will now consider Defendant's § 2255 application. Defendant alleges forty-two (42) grounds, which are as follows: 1) the Government's evidence at trial was fruit of the poisonous tree;[5] 2) he was denied due process at trial because the Government failed "to complete their evidence on their direct presentation at trial" and failed to prove his guilty beyond a reasonable doubt;[6] 3) the evidence at trial was insufficient to establish guilt beyond a reasonable doubt;[7] 4) his 5th Amendment right to be tried on an indictment was violated when the Government "modif[ied its] theory of proof and alter[ed its] evidence;[8] 5) he was denied due process because Government presented false evidence and perjured

---

[5] Defendant alleges that there was no search warrant at the time of the search and that police, the Monroe County District Attorney, and the U.S. Attorney conspired to perform an illegal search. He maintains that the search warrant affidavit was fabricated after the search using information found during the search.

[6] He alleges, for example, that the Government should have introduced the search warrant as evidence at trial and explained the circumstances leading up to the search. He maintains that the Government's failure to do so prevented him from proving that the search warrant was fabricated.

[7] He alleges for example that the Government did not properly test the drugs that were seized or establish the weight of the drugs. He also contends that the Government did not prove that the shotgun met the statutory definition of a firearm.

[8] He alleges for example that the Government modified the indictment by the method it used to test the drugs.

8

testimony;[9] 6) prosecutorial misconduct during trial;[10] 7) prosecutorial misconduct during opening and closing arguments; 8) Government violated *Brady*;[11] 9) he was denied Sixth Amendment right to confront accuser;[12] 10) prosecutorial misconduct before the Grand Jury;[13] 11) Government abused prosecutorial discretion and Court lacked jurisdiction;[14] 12) double jeopardy; 13) evidence obtained during execution of search warrant was rendered inadmissible because federal agent was present during search; 14) indictment was "procured without Due Process";[15] 15) he was denied due process because of "excessive hearsay testimony presented by Agent Timothy Kernan to grand jury"; 16) he was denied Sixth Amendment right to compulsory process;[16] 17) he was denied statutory right to speedy trial (in part a variation of his double jeopardy claim); 18) he was denied Fifth and Sixth Amendment rights to speedy trial; 19) double jeopardy (second double jeopardy claim); 20)

---

[9] He alleges that the Government knowingly suborned perjury by the police officers concerning the search and the evidence seized, and fabricated lab reports.

[10] He alleges that the prosecutor implicitly vouched for the credibility of his witnesses by using the fabricated evidence or by failing to produce evidence to support the testimony of prosecution witnesses.

[11] Defendant maintains for example that the Government failed to disclose in the search warrant application that the informant was attempting to gain leniency for criminal charges against him.

[12] He alleges that he had a right to examine at trial the confidential informant who made the drug purchases described in the warrant application.

[13] He contends that the indictment was obtained using false evidence.

[14] He alleges that the Government could not use information in this case obtained from the prior state-court prosecution.

[15] He alleges that the indictment was not supported by any evidence.

[16] Defendant alleges that the Government wrongfully failed to disclose the identity of the confidential informant described in the search warrant application because there was no such informant and all of the facts in the warrant application were lies. At the same time, though, as noted above, Defendant maintains that there was such an informant, who made a deal with the Government for leniency, and that the Government failed to disclose such deal.

he was denied equal protection due to successive prosecutions;[17] 21) he was denied due process due to successive prosecutions; 22) double jeopardy (third double jeopardy claim); 23) due process violation caused by "outrageous conduct"; 24) jury should not have been excused during legal arguments at trial;[18] 25) Court admitted tampered evidence; 26) Court erred by admitting Government exhibits without chain of custody; 27) Court admitted testimony without a reliable foundation; 28) Court erred by admitting photos of crime scene; 29) Court erred by admitting diagram of location searched; 30) Court erred by admitting business records from General Insurance Co. and Frontier Corp.; 31) Court denied him fair trial by refusing to allow him to present his defense;[19] 32) Court erred by allowing Wolford to represent him during trial after Wolford had moved to be relieved as counsel;[20] 33) he was denied due process because of trial judge's misconduct; 34) he was denied due process during appeal process;[21] 35) he was denied due process when his property was administratively forfeited; 36) he was denied due process because of unlawful pretrial detention; 37) he was denied due process when Judge Telesca transferred the case to the undersigned for trial; 38) he was denied full and fair opportunity to litigate suppression issue

---

[17] He alleges that the U.S. Attorney failed to follow his own internal guidelines in determining whether to prosecute him.

[18] He alleges that the Court excused the jury during legal arguments in order to hide from the jury the fact that the Court was allowing inadmissible evidence to be introduced.

[19] He alleges that the Court "prevented" him from presenting a defense by failing to question defense counsel at greater length about why counsel had decided not to pursue a particular defense.

[20] He alleges that Wolford "completely railroaded him," despite obtaining an acquittal on Count Three of the indictment.

[21] He alleges *inter alia* that the Court assigned him a new attorney on his appeal in order to cover up all of the alleged wrongdoing described above.

at trial and on appeal;[22] 39) he was denied due process at trial and on appeal "because of structural errors";[23] 40) his sentence violates the Fifth and Sixth Amendments;[24] 41) he was denied Sixth Amendment right to effective assistance of counsel;[25] and 42) he was actually innocent.[26] Along with his motion, Defendant submits a proposed 319-page memo of law, and seeks permission (Motion [#175]) to file such "brief" in excess of the page limits established by the local rules.

Of the 42 grounds in his motion, Defendant alleges that he raised numbers 12 (due process/double jeopardy), 13 (federal agent participated in execution of search warrant),

---

[22] He alleges *inter alia* that appellate counsel agreed to an improper standard of review which the Circuit Panel applied.

[23] The alleged "structural errors" are: "judicial bias and ulterior motives" of the Court; denial of counsel by defense attorneys who were "spys [sic] for the government"; and "trickery, collusion, [and] fraud" by the government.

[24] He alleges for example that the Court sentenced him based on its own "tentative findings" rather than on the facts of the case, and improperly considered relevant conduct and a youthful offender adjudication. He also contends that the Court improperly substituted Green as counsel in place of Wolford at sentencing. On this point, while Defendant maintains that Wolford was a spy for the defense who conspired with the Government and the Court to have him convicted, he also argues contradictorily that if Wolford had remained as counsel at sentencing, he would have prevented the Court from imposing an improper sentence.

[25] He alleges that his attorneys were ineffective in the following ways: 1) Smith failed to obtain Defendant's pretrial release; 2) Thompson failed *inter alia* to obtain pretrial release and suppression of evidence, and helped the Government and the Court "cover up" the fact that Defendant was being unlawfully detained; 3) Lapine failed to obtain pretrial release, would not agree with Defendant's theory about fabricated evidence, refused to withdraw motions previously filed by Thompson, and was in collusion with the magistrate judge; 4) Wolford failed to obtain pretrial release, failed to withdraw previous counsels' motions, failed to conduct a proper investigation, asked questions on cross-exam that opened the door for other harmful evidence to come in against Defendant, failed to have case dismissed based on fabricated evidence, and refused to present Defendant's theory of defense; 5) Green's provided sham representation to cover up all of the alleged wrongdoing, failed to obtain a proper sentence, failed to argue ineffective assistance on appeal, improperly submitted an affidavit responding to Defendant's *pro se* supplemental appeal brief despite being directed to do so by the Second Circuit, failed to file a petition for certiorari, sabotaged the appeal and acted in collusion with clerks at the Second Circuit to deny Defendant his rights; 6) Brooks filed a petition for cert rather than attempting to reargue before the Second Circuit.

[26] He states that because of all of the alleged constitutional violations and errors discussed above, "it is more likely than not that no reasonable juror would have convicted me in the light of new evidence." Memo in Support of § 2255 Motion p. 318-319, [#174-3] at 86-87.

20 (successive prosecution/selective prosecution), 22 (double jeopardy), and 26 (chain of custody) in his direct appeal.[27] As for the remaining thirty-seven points that Defendant raises in the pending application, he maintains that they were not raised in his direct appeal "because of ineffective assistance of counsel."

Assuming *arguendo* that Defendant had raised any of his 42 points in his direct appeal as he maintains, they were rejected by the Second Circuit[28] and he would therefore be barred from re-litigating them here. *See, U.S. v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) ("In his § 2255 petition, Pitcher may not now contend that counsel was deficient because that ground was substantially argued to, and rejected by, this court on Defendant's direct appeal.") (citation and internal quotation marks omitted); *Yick Man Mui v. U.S.*, 614 F.3d 50, 55 (2d Cir. 2010) ("[A] Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal.") (citation and internal quotation marks omitted); *Id*. at 53 ("The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate.") (citation omitted). On this point, the Court finds that Defendant in fact raised points number 3, 12, 13, 19, 21, and 22, as part of his supplemental *pro se* appeal brief, and that he is therefore barred from re-litigating them.

To the extent that Defendant's remaining arguments (not involving alleged ineffective assistance of counsel) could have been raised on direct appeal but were not, as appears

---

[27] It appears to the Court that Defendant actually raised numbers 3, 12, 13, 19, 21, and 22 in his supplemental *pro se* appeal brief.

[28] *U.S. v. Sykes*, 2008 WL 5246040 at * 14 ("We have considered all of Syke's other arguments and find them to be without merit.")

12

to be the case for most of those claims[29], they are procedurally barred, unless Defendant can show cause and prejudice, or actual innocence. *See, Yick Man Mui v. U.S.*, 614 F.3d at 54 ("A second rule that applies in the Section 2255 context prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice.") (citation omitted); *Sapia v. U.S.*, 433 F.3d 212, 217 (2d Cir. 2005) (Section 2255 movant who fails to raise issue on direct appeal procedurally forfeits his claim unless he shows " (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence.") (citation omitted).[30]

Defendant contends that he has shown cause and prejudice based on ineffective assistance of counsel, which the Court will discuss further below. Alternatively, Defendant maintains that he is not required to show cause and prejudice. First, he contends that his constitutional/jurisdictional claims are not procedurally barred, under the "deliberate by-pass test." *See*, Defendant's Traverse 1-2. However, that argument fails because the Second Circuit expressly abandoned the "deliberate by-pass test" in *Campino v. U.S.*, 968 F.2d 187, 189-190 (2d Cir. 1992) ("[W]e expressly abandon the 'deliberate by-pass' test for determining when a federal defendant has waived a claim under § 2255 by failing to raise it on direct review."). Instead, the Court adopted the cause/prejudice/actual innocence test.

---

[29] The only exceptions are grounds 34, 38, and 39, in which Defendant alleges that his rights were violated during the appeal itself. However, Defendant's vague and conclusory assertions on those points that he was "denied due process" fail to establish any entitlement to relief. As for number 38, any suggestion that Defendant was prevented from fully litigating the suppression issue is clearly belied by the record.

[30] This procedural bar does not apply to claims of ineffective assistance of counsel that were not raised on direct appeal. *See, Yick Man Mui v. U.S.*, 614 F.3d at 55 (Observing that *Massaro v. U.S.*, 538 U.S. 500, 508-509, 123 S.Ct. 1690 (2003) "allows a habeas petitioner to raise ineffective assistance claims in a Section 2255 petition even though no ineffective assistance claims were raised on direct appeal.").

Additionally, Defendant argues that his claims are not procedurally defaulted because the alleged violations caused a "complete miscarriage of justice," and because he is actually innocent of the charges on which he was convicted. Defendant's Traverse at 2; *see also*, Defendant's Affidavit in Support of § 2255 Motion [#179] at ¶ 3(A) ("I submit that I am actually innocent of the charges against me."). In support of this claim of actual innocence, Defendant submits *inter alia* a three-page affidavit which contends the following: 1) no lab tests were ever performed on the evidence seized; 2) the officers who searched his home did not have a search warrant, and they fabricated the warrant after the arrest; 3) the allegations in the search warrant application were fabricated to cover up the fact that police officers stole money and jewelry from him on October 28, 2004; 4) police planted the drugs in his apartment; 5) the state-court judge who signed the search warrant had a vendetta against him dating back to 2000;[31] 6) some of the money seized from his home was stolen and remains unaccounted for; 7) defense counsel refused to investigate his claims about the aforementioned matters; 8) Wolford participated with the government in procuring false evidence and perjured testimony against him; and 9) he was not arrested pursuant to a warrant, and the arrest warrant was fabricated after the arrest. Defendant's Affidavit in Support of § 2255 Motion [#179] (dated March 20, 2010). Defendant states that these factual averments are "true and correct to the best of my information and belief." *Id*. at ¶ 4.

"Actual innocence" in this context is very difficult to prove. *See, Pennington v. Bennett*, 372 Fed.Appx. 144, 146, 2010 WL 1508274 at *1 (2d Cir. Apr. 16, 2010) ("The fundamental miscarriage of justice exception is extremely rare and should be applied only

---

[31] The Hon. Frank P. Geraci, Jr., Monroe County Court Judge, who had previously sentenced Defendant in 2000 as mentioned above, also signed the search warrant.

14

in the extraordinary cases.") (citation and internal quotation marks omitted) (unpublished). In that regard, it is well settled that, "[i]n order to establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. Furthermore . . . 'actual innocence' means factual innocence, not mere legal insufficiency." *Fountain v. U.S.,* 357 F.3d 250, 255 (2d Cir. 2004) (citations and internal quotation marks omitted). Moreover,

> [t]o be credible, an actual innocence claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Since our concern is with factual innocence, not mere legal insufficiency, our focus is on the probative force of relevant evidence, which means we consider evidence even if it was either excluded or unavailable at trial. An actual innocence claim does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. In other words, absolute certainty about the petitioner's guilt or innocence is not required, but the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.

*Foster v. Phillips*, 326 Fed.Appx. 597, 598, 2009 WL 1230534 at *1 (2d Cir. May 6, 2009) (unpublished; citations and internal quotation marks omitted).

Here, the question is whether Defendant is actually innocent of possessing 50 grams or more of cocaine base with intent to distribute, possessing more than five grams of cocaine base, and being a felon in possession of a firearm. Defendant is a convicted felon who was found in his apartment with large amounts of crack cocaine and cash, along with a shotgun. As the Second Circuit observed, the evidence at trial of Defendant's guilt was overwhelming. Defendant's proffered evidence of his actual innocence essentially amounts to his contention that police, prosecutors, defense counsel, and the Court, conspired to

frame him.[32] He apparently maintains that the motive for such conspiracy was to steal money and jewelry from him. He contends that police planted the drugs and the shotgun in his apartment, and that the documentary record supports his claims. However, the Court disagrees and finds that Defendant's claim of actual innocence is not credible and is completely lacking in merit.

As mentioned earlier, Defendant maintains that he is not procedurally barred from presenting those claims that could have been raised on his direct appeal, since he can demonstrate cause and prejudice in the form of ineffective assistance of counsel. He also raises independent claims of ineffective assistance, which he was not required to raise on direct appeal. In fact, he alleges that each of the seven[33] attorneys who represented him in his state and federal prosecutions were ineffective, including Bitetti, who successfully obtained suppression of the evidence in state court.

To establish ineffective assistance of counsel, a defendant must meet two requirements:

> First, he must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness' under the 'prevailing professional norms.' *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show a 'reasonable probability' that absent counsel's error, the outcome of the proceeding would have been different. *Id*. at 687-88.

*Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (footnote omitted). When applying the first *Strickland* prong, courts must be

---

[32] *See, e.g.*, Defendant's Traverse [#182] at 20 ("To find that the evidence against me was overwhelming, the court would be sanctioning the police misconduct, prosecutor[ial] misconduct, judicial misconduct and the fraud that occurred to obtain the petitioner's conviction[.]")

[33] Bitetti, Smith, Thompson, Lapine, Wolford, Green, and Brooks.

> mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts. To give appropriate deference to counsel's independent decisionmaking, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Another familiar risk is that, in the illuminating light of hindsight, we might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him. To counteract this inclination to evaluate counsel's performance against insight gained only through the passage of time, *Strickland* requires that "[w]hen assessing whether or not counsel's performance 'fell below an objective standard of reasonableness ... under prevailing professional norms,' " we must "consider the circumstances counsel faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." [*Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (*quoting Strickland*, 466 U.S. at 688-89, 104 S.Ct. 2052) (first ellipsis in original).

*Parisi v. U.S.*, 529 F.3d 134, 141 (2d Cir. 2008). With regard to alleged ineffectiveness of appellate counsel,

> it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted).

As for the second prong of the *Strickland* test, to establish prejudice the Defendant is

> required to show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors.

*Gersten v. Senkowski*, 426 F.3d 588, 611 (2d Cir. 2005) (citations and internal quotation marks omitted). The strength of the government's case is relevant to whether the

Defendant suffered prejudice. *See, id*. ("[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus.") (citation omitted); *Rosario v. Ercole*, 601 F.3d 118, 136 (2d Cir. 2010) ("*Strickland* makes clear that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." 466 U.S. at 696, 104 S.Ct. 2052.") (Straub, J., concurring in part and dissenting in part).

In this case Defendant essentially argues that the entire case against him was fraudulent, and that if his attorneys had done their jobs properly they would have exposed that fact and obtained either suppression, a dismissal of the indictment, an acquittal, or a reversal on appeal:

> [N]one of the evidence that petitioner stand[s] convicted of should have made it in front of a jury because the evidence was insufficient as a matter of law to establish the petitioner's guilt beyond a reasonable doubt . . . making the petitioner actually innocent of the charges . . . . The petitioner asserts that had counsels made the proper motions raising these significant constitutional and jurisdictional claims and made appropriate objections it is no doubt that this case would have been dismissed before trial ever occurred in this matter or dismissed during trial. . . . [C]ounsel did not thoroughly cross examine witnesses because he fail[ed] to use available impeachment evidence to demonstrate to the jury that the government witnesses were committing perjury and show the jury that the government presented false evidence in support of their case . . . [A] defense case was not presented, because had counsels made the proper objections and filed the proper motions as explained above the petitioner would have been acquitted on each count of the indictment.

Defendant's Traverse [#182] at 14-15, 17-18. He further maintains *inter alia* that his attorneys were necessarily ineffective for failing to obtain his pretrial release.

However, the Court finds that Defendant has not satisfied either prong of the *Strickland* analysis. Defendant has not shown that his attorneys' performance fell below an objective standard of reasonableness under the prevailing professional norms. Even

18

assuming that he could make such a showing, he has not shown prejudice, given the overwhelming strength of the government's case against him. Consequently Defendant has not shown ineffective assistance of counsel, either as an independent claim or to establish cause and prejudice for failing to raise claims on direct appeal. Even assuming *arguendo* that Defendant could establish cause and prejudice concerning the claims that could have been raised on direct appeal, the Court finds that they lack merit.

The Court has considered all of Defendant's remaining arguments and finds that they also lack merit.

## CONCLUSION

For the foregoing reasons, Defendant's application under 28 U.S.C. § 2555 [#174] is denied. Defendant's application for summary judgment [#183] is denied. Defendant's motion [#186] to hold the § 2255 petition in abeyance/to dismiss the action pursuant to FRCP 12(b) is denied. Defendant's applications for release and recusal [#176][#177] are denied. Defendant's application [#175] for leave to file an oversized brief is granted. Any remaining applications are denied as moot. The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated:  Rochester, New York
        January 24, 2011

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge